Thank you, Your Honor. I'd like to thank you for this opportunity to discuss the University of St. Thomas from the erroneous discipline of John Doe. In doing so, it's important to note a couple of key points. First, John agrees with the district court's holding that UST owed John a duty of care under barrio to provide fair and impartial disciplinary proceeding with appropriate due process protections. Second, the court should disregard UST and Minnesota Private College Council's false claim that the district court ruling opens up litigation floodgates. This is false in part because the U.S. Department of Education's recent regulations already mandate the common sense due process protections. UST denied John. It's also false because the district court, like dozens of other court decisions cited in John's brief, accurately determined that he said, she said, Title IX disciplinary proceedings impose greater duties on universities than those required in other types of disciplinary proceedings. Mr. Rosenberg, just a quick question. I think you said the court held that there was a duty. Did the court hold there was a duty or did the court assume there was a duty? What the court did was they applied the barrio and Rollins as finding a duty based on due process and evaluating and a fair and impartial proceeding. So the duty or negligence duty was identified as including the fraud, the fair and impartial proceeding. In this case, this did not occur because there's a systemic bias against accused students like John. The learners in part because UST trained its employees that there's almost no chance that accusing students might make unfounded allegations of sexual misconduct. For instance, UST trained its employees that accusing students are telling the truth even if they provide inconsistent explanations for their alleged assault or deliberately omit exculpatory evidence. Now this training is built on the premise that accusing students inconsistencies are caused by trauma and therefore cannot be used to establish the untruthfulness or lack of credibility. But a peer-reviewed academic journal noted no available research supports this premise and the type of training UST utilized causes investigators to become biased with presumptions of guilt. Now in this case, we've cited six court decisions that found students like John and established actionable bias based on their university's biased training materials. And these decisions speak to the core of the breach in this case because UST's training is completely devoid of how to ascertain whether Jane's contradicted testimony occurred because she was lying or because of alleged trauma. And in this court, in this case, the district court properly acknowledged that UST manifests a bias in favor of accusing students that cut against accused students. But the district court appears to have erroneously experienced this bias because it was looking for gender bias. This was there because UST's breach of its duty can also be based on UST's bias in favor of accusing students. Now here, John did establish this bias because UST repeatedly failed to question Jane about inconsistencies that supported John's innocence. For example, Jane was never questioned about her roommate contradicting Jane's allegation that the roommate would not have heard John slam Jane into a bathroom cupboard because the roommate was sound asleep. UST knew Jane's allegation was suspect because Jane's roommate testified that not only was she awake, but that she talked with Jane before Jane entered the bathroom without knocking to join John and that the roommate heard no sounds or disturbances coming from the bathroom. Similarly, Jane was not questioned about her false allegation that she was so afraid of John that she double-checked the exit door of the building to make sure that John could not get back in. This was false because a surveillance video of this exit door proved it never happened. Another example, if you look in the record, the fact finders exchange an email in which they say, we really need to get Jane to commit to telling the truth like we did to John. We have to ask her these questions because her answers could impact her credibility. But when you read the notes from the interviews, you see that that never happened. For example, Jane provided, instead of answering questions, provided a bullet point presentation of her allegations against John and the investigator's adjudicators never asked her to explain the contradictions between that bullet point and the first interview or the bullet point and what she said to the police. You have evidence that they were trained, the investigators' adjudicators. For example, one knew that the normal process to address someone's problem is to ask them follow-up questions, but that he never asked Jane to address the problems in her testimony. Another explained that the other investigator said that her job was really to let Jane tell her story. This is all based on the training that's debunked by the six decisions I've discussed as well as the peer-reviewed article. So reasonable jurors would likely find the totality of the unasked and unanswered questions discussed in the briefs violated UST's duty because UST trained its employees to view accused students through a collective guilt lens. And to prohibit John from exposing this collective guilt, UST uses what's called a single adjudicator model, which is now, under the new US Department of Regulations, prohibited. But this single adjudicator model allows one group to serve as the police, prosecutor, judge, and jury, while simultaneously denying accused students live hearings and cross-examination. Now, it violates US Department of Education regulations and runs about upwards of 25 court decisions that mandate cross-examination, and he said she said cases. Therefore, we would ask this court to reverse the decision on the negligence case. In addition, one other issue that's raised in our brief I want to cover quickly. Could I ask a question on a different issue here? I'm wondering, and this may be a little out of left field, but what your damages claim here would be? And the reason I'm asking is we're here in diversity jurisdiction. How do you get over the 75,000 threshold, given the facts of this case? Well, you have pain in the suffering issues, as well as the out-of-pocket lost scholarships, as well as expert opinion. But what have the scholarship provoked because of grades? Well, the scholarship, he was kicked out of the school, so he can't come back. So the loss of the scholarships are recurring, so that's part of the issue. The issue also here is that had this case gone to trial, whether there would have been expert witness testimony about lost wages or the missed academic time, those are issues that aren't before the court and really wasn't raised specifically in the briefs. But there is enough damages here to show that this should have gone to the jury. That would be essentially an issue of material fact, I would say, Your Honor. On the issue that I was going to raise with you is whether Jane should have been deposed or whether the court abuses discretion. I do believe it's important to acknowledge here that although UST did not raise these issues in an amicus filed by Jane, did raise meritorious waiver issues related to Civil Rule Procedure 72. We would ask that the court determine that since UST didn't raise these arguments, that they waived the right to do that and that the court find that there was an abuse of discretion in not allowing John to depose Jane in response to a summary judgment motion that was filed. Because there was hearing testimony on the motion to compel the jury. John needed to depose Jane about a negative issue because the investigators were alleging that they didn't remember what happened in the interview. So he needed to depose Jane. So on that last issue that I have in front of this court, if you have any questions, I'd be happy to answer them. Otherwise, we would ask that the court revert the district court's dismissal of John's negligence claim because juvenile workers would likely find that UST's biased Title IX procedure violated the duty under Barrio because to do otherwise would allow Minnesota private universities like UST to violate the their educational options and their future employment opportunities. Thank you. Thank you, Mr. Rosenberg. We'll hear from Mr. Schouler. Thank you, Your Honors. David Schouler representing the University of St. Thomas. And we agree with Judge Stuenheim's decision to grant summary judgment. And we believe that St. Thomas demonstrated that they conducted a fair and impartial investigation consistent with their policies and procedures and that they acted in good faith. However, the focus of our argument today is on what we view as an expansion of the law that's impermissible by the United States Supreme Court. And what we want to focus our argument on is what was the state of the case law in Minnesota before Judge Stuenheim made this decision at the district court level. And we believe that there's well settled case law that goes back 100 years and that is a very limited limited duty. And that is a duty for colleges and universities not to expel students arbitrarily. That is the state of law. There's nothing else regarding negligence, reasonableness or anything like that. And I think if we look closely at the case law and we're talking first Davis-Monroe, which is the highest court in the land basically stating that courts should stay out of the business of second-guessing universities and especially private universities. And then we have Avario and the Rollins case. And those are the two cases that we believe that the district court misinterpreted. And let's go back to what we believe the district court did in committing error. We believe that the decision that Judge Stuenheim is issued regarding the duty and the expansion of law is contrary to precedent. And we also believe it's bad policy. And when we talk about opening the floodgates, we truly believe this is a case that opens the floodgates. Attorneys use that overuse that phrase all the time. But in this particular case, you have a reasonableness standard where every single dispute can suddenly end up in federal court. Let's talk about what Judge Stuenheim did in interpreting these cases. And when we're looking at the cases, there tends to be two kinds of discipline that we have buckets for. One is academic, and the other one is non-academic. And in the Avario case, it was it's either you can meet the 2.0 threshold to be in decision that the student was properly expelled because he couldn't meet the thresholds. And they did not do so arbitrarily. They acted in good faith. That's an easy case. Judge Stuenheim seems to suggest that the Rawlins case was somehow different. The Rawlins case involved impermissible email. So that was a non-academic case. And in Rawlins, the court clearly and unequivocally stated Minnesota law. And Minnesota law states the same has been the precedent for the last 100 years. You cannot arbitrarily expel students. Judge Stuenheim seems to indicate that there's an expansion of the law, and we believe he's in error. And in fact, if you look closely, you'll see that the court in the Rawlins case quotes an Iowa case that talks about something more than an arbitrary standard. They talk about a reasonableness to standard, and we believe if you look at that Rawlins case, that is rejected. And to the extent that Judge Stuenheim implies that duty, we believe he's wrong. That is an expansion of Minnesota law. The panel asked a question about whether or not that duty exists or it's implied. If you look at where he expands the law well beyond what the United States Supreme Court says that a district court judge is allowed to do. And I quote, and on page 11, Judge Stuenheim states, thus, when the Supreme Court stated that, quote, the requirements imposed by the common law on private universities parallel those imposed by the due process clause on public universities, end of quote, it necessarily implied. It necessarily implied that something more than an arbitrary standard would apply to university disciplines, standards, disciplinary actions based on student misconduct. We don't believe there's any implied duty in there, and to the extent that it was discussed in the Avario case, it was dicta. So this represents a significant expansion of the law, and we don't even have an arbitrary standard now. We have a reasonableness standard, and not only do we have a reasonableness standard, we have a situation where that is not discussed. And so we have a standard without any parameters, which generally makes bad law. And that is where we settle Minnesota law. We also think it's bad policy. And there's a number of reasons why it's bad policy. One of the primary reasons that it's bad policy is because courts are now in the business of interfering what is largely an academic matter, and that is how do we discipline students? And how they do so individually has largely been left to the institutions. And in this particular case, the amicus brief, as well as our brief, point out that you have many, many private Christian faith schools in Minnesota. University of St. Thomas is one of them, along with St. Olaf and Augsburg and Hamlin and others. They are faith-based institutions, and the court shouldn't get into the business of doing that. And we believe that it's bad policy to do so. And we also want to note that private colleges have individualized missions and values. St. Thomas, for example, is a mission-driven institution that is faith-based. This identity shapes its unique educational objectives and desired campus culture, policies, and processes. And in this particular case, you have to understand that the university did not expel John Doe. In fact, what they did is they gave him a three-semester suspension, after which he served, he'd be allowed to come back to school. And in this particular case, as part of the record, the sexual misconduct was not the first issue that he'd have. He had a school already involving alcohol consumption, inappropriate comments to students. So here was a situation with John Doe where they said, we're essentially going to make you sit on the bench to reflect. We want you to reflect on your Catholic values, and afterwards, you can come back to the school. That was the discipline that St. Thomas came up, and that was after a fair and of second-guessing what St. Thomas did. For this reason, we ask that the court roll back the expansion of the law and affirm on the additional grounds. In addition, if you look at the breach, we believe there's no breach, and you have to look at what St. Thomas did at the investigative level. As soon as John Doe received notice of the report by Jane Doe, he was immediately advised of that, and he hired an attorney, Mr. Beau McGraw, who was involved every step of the way. And this was a thorough and impartial investigation. During the course of the investigation, John Doe was able to identify witnesses. John Doe was able to introduce documents. John Doe was able to introduce other evidence and suggest particular questions to be asked of all of the witnesses, including Jane Doe. And John Doe was interviewed twice, including having an opportunity to react to Jane Doe's testimony. And John Doe's lawyer was accompanied throughout the process and was present at his hearing. We believe that was waived at the administrative level. Nonetheless, that is not allowed by the policies and procedures in St. Thomas' handbook. And in fact, even in public universities, they are not required to allow the cross-examination. And if you think about it in a practical manner, think about not only a sexual misconduct hearing, but every single hearing involving disciplinary proceedings. How do we handle this? We have coming in and cross-examining somebody about cheating an exam, getting in a bar fight, any single grievance or misconduct that could be disciplined. You now have Bo McGraw, who is a trained criminal attorney or somebody similar to him, coming into the college and university and cross-examining a Jane Doe or other witnesses. That is exactly what colleges and universities across the country don't want. And courts have not allowed that. After there was this... If I may interrupt, how do you respond to the recent citation of the John Doe versus University of the Sciences case from the Third Circuit? And what was the site again? The John Doe versus University... University of the Sciences from the Third Circuit. I've read all of these cases several times. I cannot remember the exact holding in that case. I would have to have my memory refreshed. You might want to look at it someday if you can break away from what other duties you have with your firm. Or the Seventh Circuit case, Jill versus Purdue University. Yeah, I think the difference here is the narrow, narrow ruling of Minnesota State Court law. And what the Avero case and the Rawlins case have stated. And I think the critical point there is we have very limited duties in the state of Minnesota. And I think those apply to different state law than Minnesota. And I think that's a distinction that we've made in our brief as well. Back to the Mr. Rosenberg we're talking about. What is the current status of the Title IX regulations? The current status of the Title IX regulations, obviously, they've changed. I'm sure you've read Erica L. Green's May 6, 2020 article in the New York Times about DeVos' rules bolster rights of students accused of sexual misconduct. Yes, I have, Your Honor. And our position is that the groundwork has dramatically shifted. There's no doubt about it. But as far as the rules and the laws as they relate to the law back at the time that this investigation was conducted, St. Thomas and the administration fully complied with all the rules and regulations at that time. And we don't disagree that the landscape has changed. But as far as the investigation at that time, we believe they were consistent with the law at that time. Unless, of course, there are constitutional duties beyond the law. And we don't disagree that if there were constitutional duties, that obviously we would follow those. But we believe that the university followed those and the due process, which does not apply to private universities, you know, is something that I think is a significant distinction in this case as well. Mr. Schooler, do you have any reaction to Judge Kobus' earlier question about the controversy here? You know, that raises an interesting point. And we raised it. We didn't raise it quite in the same context. But we have indicated that we do not believe that he has damages. He was not kicked out of the school, as counsel points out, but rather suspended. And his GPA in the first semester was already an issue. So whether or not he was going to maintain a scholarship is something that needed to be determined. But he had a certain GPA. He was required to be at to maintain that. And he wasn't there. And as far as the monetary damages, we believe you have to post some level of monetary damages. And we don't even think he can post a single dollar. And as far as the manner in which he's seeking to claim the emotional distress stamp, that's contrary to Minnesota law. And there's the Carlton decision in which Judge Shilts points out that you need to have an actual physical injury, which he doesn't have. So getting back to that, we think that's another alternative basis for which the court could determine that there is no damages. And the case could be reversed in that as well or denied, excuse me. And then finally, and I don't necessarily think that would be the result. I think the result would be a dismissal for lack of jurisdiction. You know what, I believe you're right on that. Lack of jurisdiction, you're correct. What was pled in terms of damages? Was there a specific dollar amount pled? No, it was the minimum. I believe it was, and I'm looking at my associate, I believe in the amended complaint, it simply stated that there was greater than $75,000 in damages, but no specific number. And I see I've got 33 seconds, so I'll hit on this final point, which is the expert testimony. In this case, it involves professional services, essentially professional judgment. This case is no different than whether it's an accountant, a lawyer, any other professional services in the state of Minnesota, you have to have an expert testify to that. And in this particular case, John Doe did not indicate or notify or disclose an expert witness and rather what he wanted to do was jam in articles, which he had no way to get into evidence. So we think that would be another way that the court would affirm the decision on alternative grounds. Thank you. Thank you, Mr. Spooler. Mr. Rosenberg, I believe you have a little bit of rebuttal time. Thank you, Your Honor. First, opposing counsel spent the lion's share of his argument talking about reversing the district court. There's been no cross appeal here, so USC has waived the ability to collaterally attack the judge's decision. I'd reference the court to the on that issue. With regard to the question about what the district court did being totally out of sync with Avaro and Robbins, that's an incorrect reading of both the district court decision and Avaro and Robbins. What the district court is really just a natural application of Avaro and Robbins by looking to due process and evaluating what qualifies as fair and impartial timeline proceedings. And there's no opening of the floodgates here. There's no second guessing those arguments don't really hold up for many reasons, as I've said earlier. One is that the U.S. Department of Education has already passed regulations that prohibit UST from doing what they're asking you to do today. And there are over 30 court decisions cited in the briefs in due process protection apply an extra dose of these in Title IX. It's very important to look. I think that you mentioned the University of the Sciences case. That's a third circuit decision that came down and basically said in the contract case that we are going to superimpose cross examination into this proceeding, even though the policy doesn't have it there because it's required for a fair and impartial proceeding. The upwards of the 25 court decisions that I'm of them and many of them address whether you have to defer to universities and found that you do not have to defer when there are constitutional violations, even in private universities. I'd ask the court to look carefully. We cited seven different decisions that they do process protections to cross examination apply in private universities. Four of them in another state that apply a very similar doctrine to Minnesota in looking to do more of that. It's similar to UST's academic freedom argument is rather fickle. They supported the previous administration regulations and everything that they couldn't do. But now under the current administration, they want to say we don't want to do that. It's really taken into two arguments. And it's important because as referenced, Secretary DeVos, when in the state of these proceedings called these kangaroo courts. Why? Because of the single adjudicator models I've described to you. John Doe, I mean, no, he claims that John had a right to cross examination. That's not in the policy. There's no hearing. There's no process to do that. This is precluded due process from happening. And that's what a barrio and Wallace looked at. Yes, they were not title not cases, but they were cases that apply due process protection. When I try to get through the couple, I think I have maybe a minute or two, the three semester suspension, and there was discussion of the suicide, psychological harm that happened to John on top of that. But that is lost wages calculated out later at trial. The expert witness testimony argument was addressed by district court and rejected the. Essentially, I would ask the court to look carefully at the training materials that are in the case. They are devoid of any any discussion on how to evaluate whether a accusing students allegations are false or based on trauma. They are devoid of any training on how to provide a fair and impartial process. They say just the opposite. They teach you how to convict the accused. Where if you're accusing a student and you tell make contradictions, you're believed is truthful. If you're the accused, do need the same. You believe is untruthful. That violates the duties under a barrio and Robins in a district court. And I ask you to reverse the court on that issue. Thank you, Your Honor. Very well, Council. We appreciate your appearance and argument and cooperation and helping us set this up. Case will be submitted and decided in due course. Thank you.